UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
THOMAS & BETTS CORPORATION,         )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 10-11947-DPW
                                    )
NEW ALBERTSON'S, INC.,              )
                                    )
            Defendant.              )
_____)

**REPORT AND RECOMMENDATION ON NEW ALBERTSON'S, INC.'S
MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS AND
TO DISMISS THOMAS & BETTS CORPORATION'S CHAPTER 93A CLAIMS**
[Docket Nos. 47, 48]

May 29, 2012

Boal, M.J.

This action arises from a contract between the parties to remediate contaminated stream banks located in the Hyde Park section of Boston. The cleanup efforts were mandated by the Massachusetts Department of Environmental Protection ("MassDEP"). In addition to claims for breach of contract and pursuant to the Massachusetts Oil and Hazardous Material Release Prevention Act, M.G.L. c. 21E ("Chapter 21E"), plaintiff Thomas & Betts Corporation ("T&B") brings claims for unfair or deceptive business practices under Chapter 93A. Defendant New Albertson's, Inc. ("New Albertson") has moved for judgment on the pleadings and to dismiss the Chapter 93A claims. (Docket Nos. 47-48). For the following reasons, this Court recommends that the District Judge assigned to this case GRANT New Albertson's motions.

I.     RELEVANT PROCEDURAL BACKGROUND

T&B started this action against New Albertson on November 12, 2010.  (Docket No. 1). The Complaint asserts various claims, including one for unfair or deceptive business practices under Chapter 93A.  (Complaint, Count III, ¶¶ 45-51).

On January 18, 2011, New Albertson filed an answer and counterclaim.  (Docket No. 7). In its counterclaim, New Albertson alleges various claims, including one for unfair and deceptive practices in violation of Chapter 93A. (Answer and Counterclaim of New Albertson's, Inc. ("NA Counterclaim"), ¶¶ 104-109).  T&B filed an answer and counterclaim to New Albertson's counterclaim on March 4, 2011.  (Docket No. 12).  On April 4, 2011, New Albertson filed an answer to Thomas & Betts' counterclaim.  (Docket No. 14).

On October 18, 2011, with leave of court, T&B filed an answer and amended counterclaim to New Albertson's counterclaim ("T&B Amended Counterclaim").  (Docket No. 45).  T&B's Amended Counterclaim added, inter alia, a claim under Chapter 93A.  (T&B Amended Counterclaim, Count VI, ¶¶ 145-151).

On October 20, 2011, New Albertson filed a motion for judgment on the pleadings, seeking dismissal of Count III of the Complaint, and a motion to dismiss Count VI of T&B's Amended Counterclaim, both asserted under Chapter 93A.  (Docket Nos. 47-48).  On November 3, 2011, T&B filed its opposition to New Albertson's motions.  (Docket No. 54).  The District Court referred the motions to this Court for a report and recommendation on January 5, 2012. (Docket No. 92).  This Court heard oral argument on April 11, 2012.

II.     FACTUAL BACKGROUND[1]

T&B is the owner of property located at 98 Business Street in the Hyde Park section of Boston, Massachusetts (the "T&B Property"). (Complaint, ¶ 4). The T&B Property is located on the upper portion of a stream known as Mother Brook, a man-made canal running through a portion of Hyde Park. (Complaint, ¶ 5).

New Albertson is the tenant-in-possession of property located at 1377 Hyde Park Avenue (the "Hyde Park Avenue Property") along the middle portion of Mother Brook immediately downstream from the T&B Property, where it operates a Shaw's Supermarket. (Complaint, ¶ 6). W/S Cardinal Hyde Park-MA Trust ("W/S Cardinal") owns the Hyde Park Avenue Property. (Complaint, ¶7).

After its purchase of the T&B Property, T&B began comprehensive environmental testing, evaluation and remediation of the T&B Property in conformance with the Massachusetts Contingency Plan that governs the testing, evaluation and remediation of contaminated property in the Commonwealth of Massachusetts.[2] (T&B Amended Counterclaim, ¶ 30). T&B discovered polychlorinated biphenyl ("PCB") contamination in the Mother Brook stream bed immediately adjacent to the T&B Property. (T&B Amended Counterclaim, ¶ 31). In

---

[1] Because this matter is before the Court on motions to dismiss and for judgment on the pleadings, the Court sets forth the facts in the light most favorable to T&B, the non-moving party. See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008); Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007).

[2] Pursuant to Chapter 21E, the MassDEP promulgated extensive regulations, collectively known as the Massachusetts Contingency Plan, 310 Code Mass. Regs. §§ 40.0000 et seq., which set forth the legal obligations for investigating and addressing contamination due to the release of oil or hazardous materials. See Zoning Bd. of Appeals of Holliston v. Housing Appeals Comm., 80 Mass. App. Ct. 406, 408-09 (2011); Commonwealth v. Eskanian, 74 Mass. App. Ct. 666, 668 (2009).

conformance with the requirements of the Massachusetts Contingency Plan, T&B tested, evaluated and remediated PCB-contaminated sediment and soil in the stream bed of Mother Brook. (T&B Amended Counterclaim, ¶ 32).

In October 2007, MassDEP "required" T&B and W/S Cardinal to conduct response actions to remediate and/or stabilize sediment contaminated with PCBs along the banks of Middle Mother Brook located on and also across from the Hyde Park Avenue Property. (Complaint, ¶ 10). At the time T&B and W/S Cardinal were directed to conduct the remediation work in Middle Mother Brook, T&B was already engaged in remediating PCBs in the Mother Brook stream bed and, therefore, it already had the engineering infrastructure and governmental permits needed to perform the remedial work on the banks of Middle Mother Brook. (Complaint, ¶ 11).

New Albertson agreed to perform the remedial work required of W/S Cardinal in Middle Mother Brook. (Complaint, ¶ 12). On November 8, 2007, T&B and New Albertson entered into a written agreement entitled "Mother Brook Bank Remediation/Stabilization Agreement" (the "Agreement"), whereby T&B and New Albertson agreed to cooperate with each other in good faith to meet their cleanup obligations to MassDEP and to share in the costs of the cleanup. (Complaint, ¶ 13).

Pursuant to the Agreement, T&B and New Albertson agreed to use T&B's environmental contractors, personnel, equipment, treatment and stream diversion system, and associated permits to perform the bank remediation work and further agreed that New Albertson's would reimburse T&B for a defined share of the costs of such work. (Complaint, ¶ 14). The parties also agreed to reserve all of their rights and claims against each other and other persons or

entities to recover their costs in remediating Mother Brook. (Agreement, ¶ 6).

From October 2007 to the Fall of 2010, the remediation of the banks of Middle Mother Brook was undertaken and completed using T&B's contractors, equipment, treatment, stream diversion system and other infrastructure. (Complaint, ¶ 22). Initially, New Albertson paid its portion of invoices for work completed between November 2007 and April-May 2008. (Complaint, ¶ 26). Since making those initial payments, New Albertson failed to reimburse T&B for its share of work completed from May-June 2008 through August 2010. (Complaint, ¶ 28). In addition, New Albertson refused to participate in a coordinated cleanup effort, which created unnecessary and costly disputes and delays in completing the remediation. (T&B Amended Counterclaim, ¶ 62). T&B also alleges that New Albertson failed to cooperate in resolving certain testing issues raised by the United States Environmental Protection Agency ("EPA") (T&B Amended Counterclaim, ¶¶ 64-72); failed to cooperate in resolving Amtrak's concerns regarding stream diversion and dewatering system (T&B Amended Counterclaim, ¶¶ 81-90); and failed to cooperate in providing timely access to its own contaminated site to allow remediation work to be completed. (T&B Amended Counterclaim, ¶¶ 91-101).

T&B alleges that New Albertson's actions were designed to unfairly shift to T&B the entire burden to carry out the mandates imposed upon both parties by the MassDEP while simultaneously allowing New Albertson to claim false credit for "joint" remediation work. (T&B Amended Counterclaim, ¶ 149).

III. ANALYSIS

New Albertson argues that T&B's Chapter 93A claim is based on a relationship and course of dealing between New Albertson and T&B in the nature of a collaboration or joint

venture and, therefore, is outside the scope of Chapter 93A. (New Albertson's Mem. at 10-11).[3] New Albertson also argues that because the parties entered into the Agreement in direct response to a governmental mandate, and not in a business context or to engage in commerce, Chapter 93A's trade or commerce requirement is not met. (New Albertson's Mem. at 11-15).

T&B counters that the parties' dispute did not arise from a joint venture but from an arm's length transaction between separate corporations to limit their financial costs and preserve the legal claims against each other. (T&B Mem. at 5-7).[4] In so doing, T&B argues that a joint venture is a legal term under Massachusetts law and that the parties' Agreement does not meet that definition. (T&B Mem. at 5-6). In the alternative, T&B argues that whether the parties intended to enter into a joint venture is an issue of fact not properly resolved on motions to dismiss and for judgment on the pleadings. (T&B Mem. at 7). Finally, T&B argues that the parties were not motivated by government mandate because MassDEP did not require them to enter into the Agreement. (T&B Mem. at 7-12). This Court agrees with New Albertson's position.

A. Standard Of Review

New Albertson has filed a motion for judgment on the pleadings with respect to the Chapter 93A claim contained in the Complaint and a motion to dismiss with respect to the

---

[3] "New Albertson's Mem. __" refers to the Memorandum in Support of New Albertson's, Inc.'s Motion for Partial Judgment on the Pleadings with Respect to Count III of Plaintiff's Complaint (Docket No. 49).

[4] "T&B Mem. ___" refers to Plaintiff Thomas & Betts Corporation's Memorandum in Opposition to Defendant's Motion for Partial Judgment on the Pleadings with Respect to Count III of Plaintiff's Amended Complaint and Motion to Dismiss Count VI of Thomas & Betts' Amended Counterclaim (Docket No. 54).

Chapter 93A claim contained in T&B's Amended Counterclaim. "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)). Accordingly, the standard of review is largely the same for both motions.

"To survive a motion to dismiss [and by extension, a Rule 12(c) motion], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In ruling on the motions, a court views "the facts contained in the pleadings in the light most favorable to the party opposing the motion – here, the plaintiff – and draw all reasonable inferences in the plaintiff's favor." Curran, 509 F.3d at 43 (citation omitted). "There is . . . a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion . . . implicates the pleadings as a whole." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006) (citations omitted). In reviewing a motion for judgment on the pleadings, the Court "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." Curran, 509 F.3d at 44 (citation

omitted).[5]

   B.   The Trade Or Commerce Requirement

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, §2(a) (emphasis added). A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury. Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009), aff'd, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006)). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may

---

[5] Review of motions to dismiss and for judgment on the pleadings is limited to the pleadings and thus, "ordinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). However, when, as here, "a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted). T&B' claims arise under the Agreement and the Agreement is expressly referred to in the Complaint. See, e.g., Complaint, ¶¶ 13-18, 22, 34. Neither party has challenged the authenticity of the Agreement and, indeed, both have referred to it in their briefs. Accordingly, the Court will consider the Agreement in deciding New Albertson's motions. A copy of the Agreement is attached as Exhibit 1 to New Albertson's memorandum of law. (Docket No. 49-1).

qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Though Chapter 93A provides a broad remedy, it is directed only at unfair or deceptive acts that arose "in the course of trade or commerce."[6] St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 66 (1st Cir. 2001) (citing Lantner v. Carson, 374 Mass. 606, 607-08 (1978)); First Enters., Ltd. v. Cooper, 425 Mass. 344 (1997)). As a threshold matter, analysis of the applicability of Section 11[5] of Chapter 93A "requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, so that they were acting in a 'business context.'" Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (citations omitted). The SJC has stated that Chapter 93A does not apply to "intra-enterprise disputes because they are more similar to purely private disputes and are not 'commercial transaction[s] . . . in the sense required by c. 93A.'" Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23 n. 33 (1997) (quoting Szalla v.

---

[6] The statute defines trade and commerce as:

. . . the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

M.G.L. c. 93A, § 1(b).

[5] A plaintiff seeking damages under Chapter 93A must proceed under one of two statutory sections, Section 9 or Section 11. Beaudette v. Sentry Ins. Mut. Co., 94 F. Supp. 2d 77, 120 (D. Mass. 1999) (citing Shawmut Cmty. Bank v. Zagami, 411 Mass. 807 (1992)). Section 9 applies to consumers while Section 11 applies to "any person who engages in the conduct of any trade or commerce." Id. (quoting M.G.L. c. 93A). T&B has alleged that it is a person engaged in the conduct of trade or commerce and brings its claims under Section 11. See Complaint, ¶¶ 46, 51; T&B Amended Counterclaim, ¶¶ 146, 151.

Locke, 421 Mass. 448, 452 (1995)); see also First Enters., 425 Mass. at 347-48 (internal business dispute between parties in the same venture not commercial marketplace transaction); Newton v. Moffie, 13 Mass. App. Ct. 462, 467 (1982) (Section 11 intended to apply to dealings between legally separate persons engaged in arm's length transactions). "Included in this 'intra-enterprise' classification are disputes stemming from an employment relationship, disputes between individual members of a partnership arising from partnership business, and transactions and disputes between parties to a joint venture and between fellow shareholders." Linkage Corp., 425 Mass. at 23 n. 33.

Courts apply the test articulated in Begelfer v. Najarian, 381 Mass. 177, 190-91 (1980), to determine whether the parties were engaged in "trade or commerce" with each other. See Milliken, 451 Mass. at 564. Under that test, courts assess "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by personal or business reasons . . . , and whether the participant played an active part in the transaction." Begelfer, 381 Mass. at 191 (internal citation omitted). Whether a particular transaction occurred in the regular course of business or occupation of the defendant is another factor to be considered, but is not dispositive. Id.; All Seasons Services, Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271 (1993).

C.   T&B's Claims Fall Outside Of Chapter 93A

T&B argues that New Albertson's motion fails because the parties are not participants in a joint venture. According to T&B, a joint venture is a "specific term of art under Massachusetts law" (T&B Mem. at 2) and New Albertson must prove that the Agreement meets the definition

of a joint venture under Massachusetts law in order to prevail on its motion.[6] (T&B Mem. at 2, 5-7). In the alternative, T&B argues that whether the parties intended to enter into a joint venture is an issue of fact not properly resolved on motions to dismiss and for judgment on the pleadings. (T&B Mem. at 7). The Court disagrees.

As clarified during oral argument, New Albertson does not claim that the Agreement is a "joint venture" as defined by Massachusetts law. Rather, New Albertson argues that the Agreement and the relationship between the parties is a joint undertaking in the nature of the kind of private "intra-enterprise" dispute that the Supreme Judicial Court ("SJC") has held does not fall under Chapter 93A. Although a joint venture is one example of the kind of intra-enterprise dispute exempted from Chapter 93A, it is certainly not the only one. See, e.g., Linkage Corp., 425 Mass. at 23 n. 33 (noting that the "intra-enterprise" classification includes employment relationships, partnerships, joint ventures, and disputes between fellow shareholders). The question is not whether the Agreement meets all of the factors necessary to establish a joint venture (although those factors may be instructive), but rather whether the

---

[6] A joint venture is "a form of business relationship which has not been comprehensively defined by our courts." Shain Inv. Co. v. Cohen, 15 Mass. App. Ct. 4, 7 (1982). While it "may not be possible to identify criteria for the existence of a joint venture with any definiteness" there is a "pragmatic check list" which "may bear upon the recognition of" a joint venture:

> (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control of management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

Id. at 8-9.

Agreement constitutes a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, so that they were acting in a business context subject to Chapter 93A. This Court finds that it is not.

First, the relationship between T&B and New Albertson was a cooperative venture and not a commercial "marketplace" transaction. T&B and New Albertson did not contract for the sale or purchase of goods or services. They did not do business together, nor is it apparent that they would have had any relationship absent the need to remediate. Instead, the Agreement provides for cooperation between the parties and the sharing of costs in an effort to meet their joint cleanup obligations to MassDEP. (Agreement, ¶¶ 1, 2, 4). In T&B's own words, the relationship was a "joint undertaking" under which the parties agreed to cooperate to complete the mandated remediation of the Mother Brook banks. (Complaint, ¶ 40).

The Agreement itself reflects that the parties were establishing a shared enterprise. It provides that the "[p]arties agree to cooperate with each other in good faith and with due haste to implement the DEP's expectations." (Agreement, ¶ 1). The Agreement also states that the "Joint Response is a joint work effort," and the Agreement establishes an interim formula for allocation cost and payment obligations of the remedial efforts between the parties. (Agreement, ¶¶ 2(c); 4).

Second, although New Albertson is engaged in trade or commerce, the transaction at issue here was not performed in the usual course of its business. In other words, New Albertson is not alleged to be in the business of environmental remediation.[7] See Complaint at ¶ 5 (New Albertson operates a supermarket in the Hyde Park Avenue Property.). Although this factor

---

[7] For that matter, there is nothing in the record that indicates that T&B is in the business of environmental remediation.

alone is not sufficient to take the transaction out of the realm of Chapter 93A, it supports the conclusion that the transaction was not in trade or commerce within the meaning of Chapter 93A.

Finally, the parties entered into the Agreement in direct response to the DEP's mandate to remediate Mother Brook, not in a business context or for the purpose to engage in commerce. The SJC "has repeatedly held that c. 93A does not apply to parties motivated by 'legislative mandate, not business or personal reasons.'" Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 440 (1998). So, for example, the SJC has held that a defendant town was not acting in a "business context" when it contracted for the construction of a waste treatment facility, not as a profit-making operation, but pursuant to an administrative order of the Department of Environmental Quality Engineering. Id. at 778-79. In that case, the Department of Environmental Quality Engineering had ordered the Town of Marshfield to close its existing waste lagoons and construct a new treatment facility, and it was pursuant to this order that the town contracted with an engineering firm to construct a waste treatment facility. Id. at 438. The engineering firm sued the Town for breach of the contract and for unfair or deceptive practices under Chapter 93A. Id. at 439. In affirming the dismissal of the plaintiff's Chapter 93A claim against the Town, the SJC noted that the order imposed by the Department of Environmental Quality Engineering carried a threat of administrative penalty for its violation, underscoring the fact that compliance with the order was mandatory, and that such orders were enforced with the power of statute. Id. at 440. The SJC also noted that the waste treatment facility would not be a profit-making operation for the town. Id. Given these factors, the SJC concluded that the Town

was not acting in a business context and was not engaged in trade or commerce within the meaning of Chapter 93A. Id. at 440-41.

Here, the parties entered into the Agreement pursuant to the MassDEP mandate that the parties remediate Mother Brook. MassDEP is authorized by statute to order the owner or operator of a site to remediate hazardous materials. See M.G.L. c. 21E, § 9. Pursuant to that authority, MassDEP directed T&B and W/S Cardinal[8] to remediate and/or stabilize the PCB contamination in Mother Brook. Agreement at p. 1; Exhibit A thereto.

The Agreement itself establishes that its motivation and purpose was to comply with the MassDEP's mandate. The Agreement recites that MassDEP notified the parties that it intended to issue a notice of responsibility to T&B and W/S Cardinal with respect to the contamination in Mother Brook. (Agreement, p. 1). It also stated that MassDEP required T&B and W/S Cardinal "to provide a verbal commitment to DEP to conduct necessary Immediate Response Actions ("IRAs") to remediate and/or stabilize the PCB contaminated sediment," and that the "[p]arties have jointly provided a timely verbal commitment to the DEP to conduct the [required work]." Id.

Indeed, T&B's Complaint states that the bank remediation action was "mandated" and "required" by MassDEP and that the purpose of the Agreement was to "implement MassDEP's expectations" and allow the parties to "meet their cleanup obligations to MassDEP[.]" (Complaint, Nature of the Action, p. 1; ¶¶ 10-11, 12; T&B Answer to Counterclaim, ¶ 32).

---

[8] MassDEP directed T&B and W/S Cardinal, the owner of the Hyde Park Avenue Property, to complete the remediation work. (Complaint, ¶¶ 7, 10). New Albertson then agreed to perform the remedial work required of W/S Cardinal pursuant to its obligations under its lease of the Hyde Park Avenue Property. (Complaint, ¶ 12). As such, New Albertson stepped into the shoes of W/S Cardinal for purposes of the remediation work.

Accordingly, the Court finds that the sole motivation behind the Agreement was compliance with MassDEP's directives. There was no separate business or commercial purpose for the Agreement and the Agreement did not contemplate any profit by the parties.

T&B argues that the Agreement was not motivated by legislative mandate because MassDEP did not mandate or order T&B and New Albertson to enter into the Agreement or to make interim payments to T&B. (T&B Mem. at 8). That argument misses the point. MassDEP required the parties to remediate the contamination and the parties attempted to carry out the mandate by entering into the Agreement. In Peabody, for example, the Department of Environmental Quality Engineering did not mandate the Town of Marshfield to enter into the specific agreement at issue in that litigation. Instead, the Department mandated the Town to build a waste treatment facility and the Town chose to do so by entering into its agreement with the plaintiff engineering firm. See Peabody, 426 Mass. at 438.

T&B argues that in order to determine whether New Albertson's conduct was motivated by government mandate, the Court must look not only at the motivation for entering into the Agreement, but also at the motivation for the alleged misconduct. (T&B Mem. at 9-10). If the alleged misconduct is motivated by or results in profit or financial gain to a commercial enterprise, then dismissal of the Chapter 93A claims is improper. (Id. at 10). T&B then argues that its allegations support an inference that New Albertson's decision to intentionally breach the Agreement was not motivated in any part by governmental mandate and that New Albertson sought to profit from its misconduct by seeking to avoid or minimize remediation responsibilities. The problem with T&B's argument is that its allegations against New Albertson, if true, do not show the kind of intentionally gainful misconduct necessary to

establish a Chapter 93A violation.  See McGonagle v. Home Depot, U.S.A., Inc., 75 Mass. App. Ct. 593, 600 n. 9 (2009).  T&B has not alleged that New Albertson misrepresented any facts, deceived T&B to induce it to enter into the Agreement, entered into the Agreement without any intention to perform or any other deceptive or unfair conduct.  Instead, the allegations, taken as true, state a simple breach of contract.  Therefore, T&B's allegations do not support an inference that New Albertson's alleged misconduct was motivated by business reasons necessary to establish a Chapter 93A claim.

Accordingly, this Court finds that T&B's claims fall outside of the perimeter of Chapter 93A.[9]

## IV.    RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant New Albertson's motion to dismiss and for judgment on the pleadings.  Accordingly, the Court recommends that the District Court dismiss Count III of the Complaint, Count III of New Albertson's Counterclaim and Count VI of T&B's Amended Counterclaim.

## V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the

---

[9] New Albertson also asserted a Chapter 93A counterclaim against T&B.  New Albertson has explained that it asserted such a claim in order to preserve its rights against T&B in the event that T&B's Chapter 93A claim is find viable by the Court.  (New Albertson Mem. at 15).  New Albertson recognizes, however, that if the Court dismisses T&B's Chapter 93A claim, New Albertson's Chapter 93A claim should be dismissed as well.  Accordingly, the Court recommends that the District Court also dismiss Count III of New Albertson's Counterclaim.

proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge