UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
THOMAS & BETTS CORPORATION       )
                                )
        Plaintiff/Defendant-in- )
        Counterclaim,           )
                                )
        v.                      )    CIVIL ACTION
                                )    NO. 10-11947-WGY
NEW ALBERTSON'S, INC.,          )
                                )
        Defendant/Plaintiff-in- )
        Counterclaim.           )
_____)
                                )
NEW ALBERTSON'S, INC.           )
                                )
        Third-Party Plaintiff,  )
                                )
        v.                      )
                                )
ALLIS-CHALMERS ENERGY, INC., et al.)
                                )
        Third-Party Defendants. )
_____)
                                )
THOMAS & BETTS CORPORATION       )
                                )
        Third-Party Plaintiff,  )
                                )
        v.                      )
                                )
SIEMENS INDUSTRY, INC., et al.  )
                                )
        Third-Party Defendants. )
_____)
```

[1]

**MEMORANDUM OF DECISION**

YOUNG, D.J.                                          May 2, 2016

## I.    INTRODUCTION

This case concerns the release of polychlorinated biphenyl ("PCBs") onto the banks and streambed of the Middle and Lower portions of the Mother Brook Stream (the "Mother Brook") located in the Hyde Park neighborhood of Boston, Massachusetts. Following a directive from the Massachusetts Department of Environmental Protection ("MassDEP") requiring Thomas & Betts and New Albertson's to cooperate in completing the remediation of the PCB-contaminated Mother Brook, Thomas & Betts and New Albertson's entered into an agreement ("the Agreement") governing the relationship between the two parties during the remediation.  Compl. 1, ECF No. 1; Trial Ex. 166.  The Agreement addressed the parties' "duty to cooperate" in implementing MassDEP's directive as well as the interim allocation of clean-up costs, among other matters.  Trial Ex. 166 2-4.  Pursuant to the Agreement, New Albertson's made interim payments to Thomas & Betts totaling $2,924,306.88 (the "Agreement Amount").  New Albertson's, Inc.'s Mot., Alter, Amend Correct J. ("New Albertson's Mot. Alter"), Ex. A, First Am. J. 2, ECF 808-1; Mem. Supp. Thomas & Betts Corp.'s Mot. New Trial ("Mem. Thomas &

Betts") 13, ECF No. 819; Trial Tr., 61:23-62:6, Dec. 18, 2015, ECF No. 796.

On November 12, 2010, Thomas & Betts filed a complaint against New Albertson's alleging that New Albertson's had ceased making interim payments to Thomas & Betts, and asserting claims for breach of contract and breach of the duty of good faith arising out of New Albertson's failure to reimburse Thomas & Betts for its share of remediation costs and for the invoices paid to the environmental clean-up contractors.  Compl. 1-2, 6-8.  On January 18, 2011, New Albertson's filed breach-of-contract counterclaims against Thomas & Betts related to the Agreement Amount as well as a counterclaim under the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws ch. 21E ("Chapter 21E") §§ 4 and 4A, for reimbursement, contribution, or an equitable share of the clean-up costs it had separately incurred.  Ans. Countercl. New Albertson's, ECF No. 7.  In response, Thomas & Betts filed its own Chapter 21E counterclaims, in addition to counterclaims alleging breach of contract and breach of the duty of good faith related to New Albertson's' failure to cooperate with Thomas & Betts in completing the Mother Brook remediation.  Thomas & Betts Corp.'s Ans. Am. Countercl., ECF No. 45.  Thomas & Betts also filed a third party complaint asserting Chapter 21E claims against Alfa Laval and the Charter School on December 8, 2011.

Third Party Compl. Boston Renaissance Charter School, Inc.,
Boston Renaissance Charter Public School, Alfa Laval, Inc., ECF
No. 83.

By the time trial commenced, the litigation had become
primarily a Chapter 21E contribution action involving several
other counterparties abutting Mother Brook.  The original
contract causes of action, though never waived, had become but a
minor subplot.  At trial, Thomas & Betts, as the primary
plaintiff, was the first party to present evidence.  After
Thomas & Betts concluded presenting its evidence, New
Albertson's moved for a partial directed verdict on Thomas &
Betts's breach of contract claims and counterclaims insofar as
these related to the invoices admittedly paid by New
Albertson's.  Mot. Directed Verdict Thomas & Betts Corp.'s
Contract Claims Non-Payment Certain Shaw Environmental Invoices
1, ECF No. 698.  The Court allowed this motion for partial
direct verdict.  Trial Tr. vol. 2, 88:2-4, Dec. 9, 2015, ECF No.
782.

Toward the end of the trial, Thomas & Betts submitted
proposed jury instructions including a proposed charge related
to the breach-of-contract and breach-of-duty-of-good-faith
claims that both Thomas & Betts and New Albertson's had
asserted.  Pl.'s Proposed Jury Instr.'s 25-29, ECF No. 691.
Neither the Court's December 18, 2015 jury instructions nor the

verdict form for the jury addressed the breach of contract claims and counterclaims.  Trial Tr., 35:9-91:21, Dec. 18, 2015; Jury Verdict.   Thomas & Betts objected to the omission of the breach of contract verdict questions in the Court's jury verdict form.   Thomas & Betts Corp.'s Obj. Court's Latest Proposed Jury Verdict Form, ECF No. 743; Trial Tr., 73:10-17, Dec. 18, 2015.

On December 22, 2015, at the conclusion of a six-week trial, the jury returned its verdict, which consisted of answers to three questions contained on the jury verdict form.  On question 1, the jury found that the plaintiff Thomas & Betts Corporation ("Thomas & Betts") had met its burden of proving that it had incurred $12,703,322.52 in reasonable and necessary environmental response costs.  Jury Verdict 1, ECF No. 801.  The jury assigned Thomas & Betts responsibility for 85% of these costs.  Id. at 2.  Of the defendants, the jury found Alfa Laval, Inc. ("Alfa Laval") and Boston Renaissance Charter School, Inc. (the "Charter School") liable to Thomas & Betts, for 14% and 1% of the response costs, respectively.  Id.  The jury also concluded on question 2 of the jury verdict form that the defendant New Albertson's Inc. ("New Albertson's") had met its burden of proving that it incurred $791,398.31 in reasonable and necessary response costs related to the clean-up of Mother Brook.  Id. at 3.  The jury left New Albertson's to shoulder 25% of these costs and found Thomas & Betts liable for the remaining

75%.  Id.  Lastly, in answering question 3, the jury found that
New Albertson's had not caused or contributed to the release of
PCBs onto the banks or streambed of Middle and Lower Mother
Brook.  Id. at 4.  The jury found that the remaining defendants,
Jeanette Yukon as general partner of Yukon Hyde Park Avenue LLP
("Yukon"), Allis-Chalmers Energy Inc. ("Allis-Chalmers"), and
Dampney Company, Inc. ("Dampney"), were not liable to Thomas &
Betts or New Albertson's for environmental response costs.  Id.
at 2-3.  The Court entered judgment upon this jury verdict on
December 31, 2015.  J. Civil Case, ECF No. 803.

Following the verdict and the ensuing judgment, all parties
in this action filed post-trial motions, including motions for a
new trial, motions to alter or amend the judgment, and motions
for judgment as matter of law.[1]  On March 29, 2016, the Court
issued an order ruling on these motions.  Order, ECF No. 890.
In view of the comprehensive trial record, most of the Court's
rulings contained in that order are self-explanatory.  Only the
two arguments Thomas & Betts raised in its motion for a new

---

[1] Three of the parties, New Albertson's, Dampney, and Allis-
Chalmers, also filed motions for attorney's fees and costs,
seeking compensation from Thomas & Betts.  Bill Costs, ECF No.
852; Bill Costs, ECF No. 854; New Albertson's Mot. Award Att'ys'
Experts' Fees Costs Pursuant M.G.L. c. 21E, § 15, ECF No. 866.
The Court has allowed Thomas & Betts until May 2, 2016 to
respond to these motions.  Elec. Order, ECF No. 881.  The
question of attorneys' fees and costs will be resolved
separately at a later date, after full briefing by all relevant
parties.

trial, Thomas & Betts Corp.'s Mot. New Trial, ECF No. 818; Mem. Thomas & Betts, and the issues surrounding the award of prejudgment fees, merit a full explanation.

## II.   THOMAS & BETTS'S MOTION FOR A NEW TRIAL

In its motion for a new trial pursuant to Fed. R. Civ. P. 59(b), Thomas & Betts raised six grounds, denominated as (A) through (F).  Mem. Thomas & Betts 1-2.  The Court denied this motion on March 29, 2016.  Order.  The Court summarily rejected arguments (B), (C), (D) and (F)[2] but addresses below Thomas & Betts' first argument -- that it must be granted a new trial because the Court declined to include a verdict question or to instruct the jury on Thomas & Betts's breach of contract claim against New Albertson's -- and its fifth argument -- that a new trial should be granted because, in the absence of a breach of contract question on the jury verdict form, it was impossible to determine what equitable allocation should apply to the Agreement.  Mem. Thomas & Betts 1, 13.

---

[2] Thomas & Betts's other arguments are that: (B) the Court erred on its jury charge on the duty to grant access; (C) the charge regarding current owner liability erroneously included an ignorance defense; (D) the jury's liability verdict is internally inconsistent and irreconcilable; and (F) the Court's charge that releases must substantially contribute to response costs was confusing and prejudicial.  Mem. Thomas & Betts 5-16.

A.    **Legal Framework**

When addressing a motion for a new trial, "[a] district court may set aside the jury's verdict and order a new trial only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 18 (1st Cir. 2014) (internal citation and quotation marks omitted).  Granting the motion is within this Court's discretion, Velazquez v. Figueroa-Gomez, 996 F.2d 425, 427 (1st Cir. 1993), which this Court exercises sparingly, see MacNeill Eng'g Co. v. Trisport, Ltd., 126 F. Supp. 2d 51, 63 (D. Mass. 2001) ("A motion for a new trial is not to be taken lightly."); Tavares v. Mich. Fishing, Inc., 937 F. Supp. 84, 86 (D. Mass. 1996).

B.    **Lack of a Jury Verdict Question on Breach-of-Contract Claim**

Thomas & Betts has not convinced the Court that the absence of a breach-of-contract verdict question (and the absence of related jury instructions) constitutes a miscarriage of justice requiring a new trial.

In its motion, Thomas & Betts argues that New Albertson's breached its duty to cooperate under the Agreement "in good faith and with due haste to implement [MassDEP]'s expectations." Mem. Thomas & Betts 4 (quoting Trial Ex. 166 ¶ 1).

[ 8 ]

Specifically, Thomas & Betts states that New Albertson's failed to meet its obligation to provide access to its property so that Thomas & Betts could perform remediation work on the Mother Brook banks and streambed.  Id.  It is, it claims, "entitled to a jury verdict" on this issue, and the Court's failure to set forth its breach-of-contract claim on the jury verdict form requires a new trial.  Id.

Its argument ignores the realities of the actual trial that took place.  While the Agreement was introduced in evidence (along with many other documents to which no objection was made), no party made any substantive reference to it throughout this long trial.  This is unsurprising, since the Agreement does nothing more than codify the signatories' duties under Chapter 21E and provide for certain interim payments from New Albertson's to Thomas & Betts.

It was only at the charge conference, upon seeing the proposed jury verdict slip, that Thomas & Betts requested a separate jury question addressing New Albertson's duties under the Agreement.  The Court demurred on the ground that such a question would add needless complexity to an already complex matter and that resolution of the Chapter 21E issues would necessarily resolve any contract questions.

Finally, there was scant evidence presented regarding the damages Thomas & Betts suffered as a result of this alleged

breach of contract.[3]  Considering the entirety of the trial, as

well as the jury's completed verdict form, the Court cannot

---

[3] "When . . . [contract] damages are sought they must be proved and not left, as here, to speculation." Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 181 (1992) (quoting Snelling & Snelling of Mass., Inc. v. Wall, 345 Mass. 634, 636 (1963).

In its memorandum, Thomas & Betts argues that it has introduced such evidence by pointing to the testimony of one of the defendants' experts at trial, Mr. Pierdinock, who testified that New Albertson's delayed access to its property for Thomas & Betts's remediation crew and that this delay resulted in $3,600,000 in additional costs for Thomas & Betts.  Mem. Thomas & Betts 1.  Later on, in its reply brief, Thomas & Betts attempts to buttress its argument by selectively referencing Mr. Peirdinock's answers during his cross-examination -- in particular his confirmation that the $3,600,000 excess costs on top of the reasonable costs were a result of the "delay." Thomas & Betts Corp.'s Reply Br. Supp. Mot. New Trial ("Thomas & Betts Reply Br.") 3-4, ECF No. 877; Trial Tr. vol. 2, 76:5-9, Dec. 9, 2015, ECF No. 782.

This is an attempt to twist Mr. Pierdinock's testimony out of all relationship to realty.  Mr. Pierdinock actually testified that, even taking into account access delays, Thomas & Betts's reasonable costs should have been lower by $3,600,000. Trial Tr., vol. 2, 26:20-27:22, Dec. 9, 2015.  Mr. Pierdinock provided no measure of what, if any, increase in remediation costs was attributable to New Albertson's delaying access to its property; rather, the increase in costs, according to him, was attributable to Thomas & Betts's lack of planning for potential delays like access delays.  Id. at 25:21-26:6.  In essence, Thomas & Betts fails to identify in its memorandum any evidence presented at trial that would have made it possible for the jury to assess damages resulting from New Albertson's's alleged breach of contract.

In its reply brief, Thomas & Betts attempts to offer another example of evidence submitted at trial that could have allowed the jury reasonably to assess damages under the contract.  Thomas & Betts Reply Br. 4-5.  Thomas & Betts points to the testimony of its own expert, Mr. Mitchell, placing the cost of the water diversion system for Middle Mother Brook at $42,000 per week.  Id.; Trial Tr., 111:10-12, Nov. 20, 2015, ECF No. 844.  Thomas & Betts proposes that the jury could have found that New Albertson's breached its duty to cooperate under the

grant a new trial on this ground.  See MacNeill Eng'g Co., 126 F. Supp. 2d at 63 (An "expensive, burdensome option," such as a motion for a new trial, "should be exercised only when an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair.") (internal quotation marks omitted).[4]

C.   **The Agreement Amount**

During the jury charge, the Court instructed the jury with respect to the Agreement Amount as follows:

> It's undisputed in this case that Thomas & Betts paid to its contractors who did the clean-up -- and you're going to have this in the transcript so you don't have to take down these figures but the figures are important and you ought to know what they are.   They paid undisputed $12,703,322.52.   It's also undisputed that of that amount New Albertsons had paid to Thomas & Betts for it

---

Agreement and assessed resulting damages by multiplying $42,000 by the number of weeks that the failure to cooperate delayed the project.   Thomas & Betts Reply Br. 5.

This too fails to create a miscarriage of justice because this theory was never adverted to at trial.   Further, this is a completely new theory for the calculation of damages that Thomas & Betts offered for the first time in its reply brief and that is unrelated to any of the arguments made by New Albertson's in opposition to Thomas & Betts's motion for a new trial.   Thomas & Betts cannot raise for the first time in the reply brief new arguments of error that could have been made in the memorandum supporting its motion.   Cf. Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999) ("Reply briefs are to counter the appellee's arguments, not to offer new theories of error for the first time."); Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983)("[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed").

[4] The Court notes that Thomas & Betts makes no claim that, in the alternative, it ought be awarded nominal damages.

to pay out to these subcontractors $2,924,306.88 [the Agreement Amount].

Now, if you find that any of these entities are liable to Thomas & Betts, you're going to come back to the first page and decide what are reasonable and necessary response costs. They can't be higher than the 12,703,000-et cetera that I just stated, but that's disputed that all of those costs were reasonable and necessary.

Let me pause for a moment and say, because I think it will occur to you, but what about the 2.9 million [the Agreement Amount] that it's undisputed New Albertsons has already paid to Thomas & Betts? The way we've worked that out is I'm taking care of that. It's undisputed as to that. If when all the things you find it turns out that New Albertsons owes more money than that to Thomas & Betts, whatever that amount is, I'm going to subtract the 2.9 million from that. If when the dust settles it's less than that, I'm going to have Thomas & Betts reimburse New Albertsons for that amount of money.

Trial Tr., 61:24-62:24, Dec. 18, 2015. Thomas & Betts argues that, in light of the above instructions and the jury verdict form that excluded breach-of-contract questions, it is impossible to know whether and by how much the jury expected that New Albertson's's recovery of the Agreement Amount would be impacted by the liability allocation under question 2 in the jury verdict. Mem. Thomas & Betts 14.

There is no cause for confusion. Reading the jury's response to questions 1 & 2 together, the jury found the entire amount expended by Thomas & Betts[5] and New Albertson's (both of

---

[5] The Court specifically instructed the jury that the Agreement Amount was part of the $12,703,322.52 that Thomas & Betts had paid in response costs and that Thomas & Betts had to prove amounted to reasonable and necessary response costs. Trial Tr., 61:24-62:24, Dec. 18, 2015.

which amounts were undisputed) was reasonable and necessary.
The jury knew the consequences of this finding (along with its
allocation of liability) insofar as the Agreement Amount was
concerned: the latter would be deducted.  See Trial Tr., 62:19-
24 ("If . . . it turns out that New Albertson's owes more money
than [the Agreement Amount] to Thomas & Betts, whatever that
amount is, I'm going to subtract the [Agreement Amount.]  If
when the dust settles it's less than [the Agreement Amount,] I'm
going to have Thomas & Betts reimburse New Albertson's for that
amount of money.").  Consequently, the Court will not grant a
new trial on this basis.

## III. AWARD OF PREJUDGMENT INTEREST

Both Thomas & Betts and New Albertson's filed post-trial
motions and supporting memoranda requesting the amendment of the
December 31, 2015 judgment pursuant to Fed. R. Civ. P. 59(e) and
Mass. Gen. L. c. 231, § 6B or § 6H, to reflect the award of
prejudgment interest.  Thomas & Betts Corp.'s Mot. Amend J., ECF
No. 820; Mem. Supp. Thomas & Betts Corp.'s Mot. Amend J.
("Thomas & Betts Mem. Amend"), ECF No. 821; New Albertson's Mot.
Alter; Mem. Supp. New Albertson's, Inc.'s Mot. Alter, Amend
Correct J. ("New Albertson's Mem. Amend"), ECF No. 809.  Given
the structure of the jury verdict, Thomas & Betts requests

prejudgment interest from Alfa Laval and the Charter School.[6]
Thomas & Betts Mem. Amend 1.   Similarly, New Albertson's
requests prejudgment interest from Thomas & Betts.[7]   New
Albertson's Mot. Alter 2-3; New Albertson's Mem. Amend 2-4.

These requests raise three issues: whether awarding
prejudgment interest is appropriate in a Chapter 21E action;
whether Thomas & Betts delayed the proceedings such that, even
if authorized by law, the Court should exercise its discretion
and reduce any award to it; and what the correct date to begin
the accrual of interest.   These will be discussed in turn.

---

[6] Thomas & Betts requests $1,096,314 from Alfa Laval, which
represents 12% per annum from November 12, 2010, to December 31,
2015, on the principal amount of $1,778,465, and $78,308 from
the Charter School, which represents 12% per annum from November
12, 2010, to December 31, 2015, on the principal amount of
$127,033.   Thomas & Betts Mem. Amend 1.
    There is some small discrepancy between the principal
amounts reported by Thomas & Betts and New Albertson's in their
briefs requesting prejudgment interest and the amounts reported
on the Court's Judgment.   J. Civil Case.   In this Memorandum,
for the sake of simplicity, the Court discusses the numbers as
reported by the parties.   The correct principal and prejudgment
interest values, to the cents, are reported in the Court's March
29, 2016 order.   ECF No. 890.

[7] New Albertson's requests $2,168,541.13 from Thomas &
Betts, which represents 12% per annum from November 12, 2010, to
December 31, 2015, on the principal amount of $3,517,855.61,
which is the sum of the $593,548.73 awarded by the jury plus the
Agreement Amount.   New Albertson's Mot. Alter 2-3; New
Albertson's Mem. Amend 2-4.

### A.    Statutory Authority for Awarding Prejudgment Interest

In a diversity lawsuit in federal court, the award of prejudgment interest is a question of substantive law governed by state law -- in this case, Massachusetts law.  See Fratus v. Republic W. Ins. Co., 147 F.3d 25, 30 (1st Cir. 1998).  Section 6B of Massachusetts General Laws Chapter 231 ("Chapter 231") provides that, in tort actions, following judgment:

> [T]here shall be added by the clerk of court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law.

Mass. Gen. Laws ch. 231 § 6B.  Section 6C includes a similar provision for contract actions.  See id. § 6C.  More generally, Section 6H of Chapter 231 provides that:

> In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law.

Id. § 6H.

In opposing Thomas & Betts's request for prejudgment interest, Alfa Laval and the Charter School (the "opposing parties") argue that prejudgment interest ought not be awarded in Chapter 21E actions.  Boston Renaissance Charter School, Inc.'s Mem. Opp'n Thomas & Betts' Mot. Alter Amend J. ("Charter

[15]

School Opp'n") 3, ECF No. 836; Alfa Laval Inc.'s Opp'n Thomas &

Betts Corp.'s Mot. Amend J. ("Alfa Laval Opp'n") 3, ECF No. 848.

In other words, they argue that Chapter 231 does not apply to

Chapter 21E actions.

While the opposing parties are correct that Chapter 21E

does not include language specifically addressing the award of

prejudgment interest, and that speaking of "damages" in the

Chapter 21E context is arguably inaccurate,[8] the Supreme Judicial

Court has, albeit without explanation, applied Chapter 231's

framework to a Chapter 21E action.[9] See Bank v. Thermo

_____

[8] The application of Sections 6B and 6C to a Chapter 21E
contribution action seems to contradict the plain language of
those sections which apply only to tort or contract actions,
respectively.  If subject to the prejudgment statute, a Chapter
21E action would more likely fit within the scope of Section 6H
which covers "any action in which damages are awarded" and in
which interest is not otherwise provided by law.  It is not
evident, however, that the equitable contributions awarded in a
Chapter 21E action qualify as damages, in particular
compensatory damages, within the meaning of that term.  See Rood
v. Newberg, 48 Mass. App. Ct. 185, 194-95 (1999) ("'damages'" is
simply "the word which expresses in dollars and cents the injury
sustained by a plaintiff" (quoting Turcotte v. DeWitt, 333 Mass.
389, 392 (1955))) (applying Section 6H in a fraud action).  A
Chapter 21E action concerns itself with the equitable
distribution of injuries suffered not by the plaintiff but by a
third-party, here the polluted Mother Brook, to which all
parties to the action have, the jury found, contributed.  In
addition, independent research provides no example of
Massachusetts appellate case law where prejudgment interest was
awarded in other types of actions for contribution, such as
those for contribution from joint tortfeasors.

[9] In that case, the plaintiffs had filed both Chapter 21E
and breach of contract claims against other parties as previous
owners, seeking contribution for the pollution on their

Elemental, Inc., 451 Mass. 638, 662 (2008).  The Court must not

second-guess that court on questions of Massachusetts law, see

Andrew Robinson Int'l., Inc. v. Hartford Fire Ins. Co., 547 F.3d

48, 51 (1st Cir. 2008) (in a diversity case, "the federal court

looks to pronouncements of the highest court of the state"), and

thus, since no contract question is at play here, concludes that

either Section 6B or 6H governs the award of prejudgment

interest in the case at bar, and sets the interest rate at

twelve percent (the rate provided by both sections).

**B.   Delay**

The opposing parties next argue that, even if Chapter 231

were to apply to Chapter 21E actions, the Court ought not award

prejudgment interest in this case because Thomas & Betts is in

large part to blame for the protracted litigation and awarding

prejudgment interest at a 12% interest rate would amount to a

"windfall" for Thomas & Betts, Mother Brook's main polluter.

---

property.  Bank v. Thermo Elemental, Inc., 451 Mass. 638, 640
(2008).  The plaintiffs prevailed on their Chapter 21E claim,
but the trial judge vacated the jury award on the contract
claim.  Id.  The Supreme Judicial Court analyzed the award of
prejudgment interest for the plaintiffs for their Chapter 21E
claim under Sections 6B and 6C of Chapter 231.  Id. at 662.  The
Supreme Judicial Court concluded that the trial judge correctly
departed from the Section 6B and 6C requirements that
prejudgment interest be computed from the commencement of the
action or from the date of breach of contract, in order to
prevent a windfall for the plaintiffs who had incurred
environmental clean-up costs at dates succeeding the Section 6B
and 6C accrual dates.  Id. at 662 n. 31.

Charter School Opp'n 3-4; Alfa Laval Opp'n 1.  The opposing parties argue that Thomas & Betts both refused to comply with certain notice-and-procedure requirements, and that, more generally, it used procedural maneuvers during litigation that resulted in delay and unfairness.

Even after deciding that Chapter 231 applies, the Court remains empowered to ensure that a "liberal award of prejudgment interest [does not] result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages." Sterilite Corp. v. Cont'l Cas. Co., 397 Mass. 837, 841 (1986). To this end, "a trial court has some discretion under Massachusetts practice to adjust an interest award if a prevailing litigant has been responsible for unnecessary delays." Liberty Mut. Ins. Co. v. Black & Decker, Inc., No. CIV.A.04-10648 DPW, 2004 WL 1941352, at *4 (D. Mass. Aug. 25, 2004) (Woodlock, J.) (quoting Foley v. City of Lowell, 948 F.2d 10, 17-18 (1st Cir. 1991), and collecting Massachusetts cases).

The opposing parties fault Thomas & Betts for not following the notice and procedure requirements of Section 4 of Chapter 21E, the purpose of which is to "encourage parties to settle environmental litigation suits without formal litigation proceedings." Alfa Laval Opp'n 7 (quoting Rudnick, v. Hosp. Mtg. Group, Inc., 951 F. Supp. 7, 9 (D. Mass. 1996)); Boston Renaissance Charter School, Inc.'s Mem. Opp'n Mot. Alter, Amend

Correct J. ("Charter School Opp'n 2d") 4-5, ECF No. 831.  Thomas & Betts, however, has already been excused from complying with the notice provision at issue.[10]  See Order Def.'s Mot. Order Directing Parties Engage Dispute Resolution Procedures M.G.L. c. 21 E 120 Stay Litigation ("Section 4 Order") (M.J. Boal), ECF No. 25.

The Charter School also faults Thomas & Betts for delaying the resolution of the dispute by means of procedural maneuvering (filing an action for breach of contract first and only later filing Chapter 21E claims); disclosing for the first time only during closing arguments the amount it contended the Charter School ought contribute -- 15%; and making settlement offers to the Charter School that were magnitudes away from the 1% liability the jury eventually assigned the Charter School. Charter School Opp'n 2d 5-8.  The delays the Charter School attributes to Thomas & Betts, however, are more akin to litigation wrinkles associated with complex litigation strategy and less like the discrete and measurable delays justifying reductions in prejudgment interest in other cases.  See, e.g.,

---

[10] In that order, Magistrate Judge Boal concluded that Thomas & Betts was not required to comply with the notice requirements of Section 4 of Chapter 21E because Section 4 does not circumscribe Chapter 21E claims later added as counterclaims to an action commenced as a breach of contract action.  Section 4 Order 6.  The same conclusion applies, more generally, to third-party claims brought by parties already joined to "any civil action."  M.G.L. c. 21E, § 4A(c); Section 4 Order 5-6.

Currier v. Malden Redevelopment Auth., 16 Mass. App. Ct. 906, 906-07 (1983) (computing prejudgment interest from the date of filing of the amended complaint where first complaint was unclear on its assertion of a certain claim for damages); Liberty Mut. Ins. Co., 2004 WL 1941352, at *4 (delaying presentation of invoices and delaying payment once presented with the invoices justify a reduction in the interest award). To put things in context, this litigation involved at some point no fewer than ten parties filing cross-motions against each other, arguing over an indivisible harm (the pollution of Mother Brook) the financial costs of which were difficult to apportion among the responsible parties -- as evidenced by the six-week-long trial where numerous experts testified and more than one thousand exhibits were introduced in evidence.  Post-trial motions and oppositions in this action number more than forty docket entries, and include submissions by all parties.

Although it may seem unfair to award significant prejudgment interest to the party most responsible for the pollution, any fairness concerns have already been addressed by the jury's apportionment of the liability.  The First Circuit has discussed this very issue, in the context of a federal statute, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675,

that serves a similar function to Chapter 231, covering

environmental contribution and cost recovery actions:

> The purpose of contribution is to equitably apportion
> response costs among liable parties. Failure to grant
> prejudgment interest on contribution awards may instead
> result in <u>inequitable</u> apportionment, because parties
> awarded contribution will still have lost the time value
> of the money they spent on behalf of other liable
> persons, and those persons will have gained an equal
> amount. Further, refusal to grant prejudgment interest
> is a disincentive for private parties to voluntarily
> undertake cleanup actions because they will lose the
> time value of the money they spend on behalf of other
> persons. Indeed, it would create a perverse incentive
> for responsible parties to delay involvement in
> cleanups, because as they delay, they gain the time value
> of the funds they should be investing in the cleanup.

<u>American Cyanamid Co.</u> v. <u>Capuano</u>, 381 F.3d 6, 28 (1st Cir. 2004)

(quoting <u>Bancamerica Commercial Corp.</u> v. <u>Mosher Steel of Kansas,</u>

<u>Inc.</u>, 100 F.3d 796, 801 (10th Cir. 1996)).  Similar concerns

animate the decision to award prejudgment interest in actions

such as this, even when the plaintiff is the main polluter.  <u>Cf.</u>

<u>City of Milwaukee</u> v. <u>Cement Div., Nat. Gypsum Co.</u>, 515 U.S. 189,

198 (1995)("[I]t might appear somewhat inequitable to award a

large sum in prejudgment interest against a relatively innocent

party.  But any unfairness is illusory, because the relative

fault of the parties has already been taken into consideration

in calculating the amount" for which each party is liable).

### C.   Date of Accrual

Lastly, the opposing parties argue that interest should run

from the date when the trial commenced on November 16, 2015, and

not from the commencement of the action, as required by Sections
6B and 6H, because of the unique features of this action.
Charter School Opp'n' at 15-16.  The Court does not agree that
the circumstances warrant the departure.  Previous Massachusetts
case law has established that prejudgment interest must be
computed from the initial filing of the complaint and not from
the date when a third party was added to the action.  See Gill
v. N. Shore Radiological Associates, Inc., 385 Mass. 180, 182
(1982) (the language of Section 6B is "to be taken literally");
Morgan v. Lab. Corp. of Am., 65 Mass. App. Ct. 816, 824-25
(2006) (prejudgment interest against third party to be computed
from the date of the filing of the initial complaint even where
third party was added to the action more than three years
later).  Courts have deviated from the language of the statute
only where the plaintiff incurred the costs at issue at a date
later than the statutory accrual date.  See, e.g., Bank, 451
Mass. at 662 (unfair to utilize commencement of the action as
prejudgment interest accrual date where plaintiff incurred at
least some of the clean-up costs after that date).  This is not
such a case -- no party disputes that Thomas & Betts paid the
clean-up costs in full prior to commencing this action.

As far as New Albertson's's requests for prejudgment
interest are concerned, Thomas & Betts opposes only the award of
prejudgment interest on the Agreement Amount, arguing that it is

[22]

impossible to tell what the jury intended to do with the
Agreement Amount.   Thomas & Betts Corp.'s Opp'n New Albertson's,
Inc.'s Mot. Alter, Amend Correct J. ("Thomas & Betts Alter
Opp'n") 2, ECF No. 830.   As discussed _infra_ Part II-C, Thomas &
Betts's argument has no merit: the Agreement Amount was part of
the $12,703,322.52 subject to the allocation of liability under
question 1 of the Jury Verdict.   Since Thomas & Betts's cost
allocation (85%) out of the $12,703,322.52 was higher than the
stipulated Agreement Amount, Thomas & Betts owes New Albertson's
the Agreement Amount and additional prejudgment interest as a
result of this Chapter 21E action.   That the Agreement Amount
was paid by New Albertson's to Thomas & Betts as part of a
contract is immaterial to this question: the jury decided only
the Chapter 21E claims for which the Agreement Amount was
stipulated.   It follow that prejudgment interest on the
Agreement Amount accrues under Sections 6B or 6H.

## IV.   CONCLUSION

For the foregoing reasons, the Court denied Thomas &
Betts's motion for a new trial and granted Thomas & Betts's and
New Albertson's' requests for prejudgment interest.   ECF No.
890.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE