UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————————— )
                             )
THOMAS & BETTS CORPORATION   )
                             )
        Plaintiff/Defendant-in- )
        Counterclaim,        )
                             )
        v.                   )     CIVIL ACTION
                             )     NO. 10-11947-WGY
NEW ALBERTSON'S, INC.        )
                             )
        Defendant/Plaintiff-in- )
        Counterclaim.        )
————————————————————————————)
                             )
NEW ALBERTSON'S, INC.        )
                             )
        Third-Party Plaintiff, )
                             )
        v.                   )
                             )
ALLIS-CHALMERS ENERGY, INC., f/k/a )
Allis-Chalmers Corporation, f/k/a )
Allis Chalmers Manufacturing )
Company, SIEMENS INDUSTRY INC., )
and ALFA LAVAL INC., f/k/a Alfa )
Laval, Inc., f/k/a/ The DeLaval )
Separator Company            )
                             )
        Third-Party Defendants. )
————————————————————————————)
                             )
THOMAS & BETTS CORPORATION   )
                             )
        Third-Party Plaintiff, )
                             )
        v.                   )
                             )
SIEMENS INDUSTRY, INC., JEWEL FOOD )
STORES, INC., STAR MARKETS COMPANY )
INC., AND HYDE PARK MANAGER, INC., )
As Administrative Trustee for W/S )
Cardinal Hyde Park-MA Trust.,   )
ALLIS-CHALMERS ENERGY, INC., f/k/a )

```
Allis-Chalmers Corporation, f/k/a  )
Allis-Chalmers Manufacturing       )
Company, THE VILLAGE AT CLEARY      )
SQUARE, LLC, HYDE PARK AUTO         )
REPLACEMENT PARTS CO., INC.,        )
DAMPNEY COMPANY, INC., ALBERT L.    )
ANDREWS, ALBERT L. ANDREWS III,     )
RICHARD F. ANDREWS, ROBERT G.       )
MATTHEWS, BOSTON RENAISSANCE        )
CHARTER PUBLIC SCHOOL, and ALFA     )
LAVAL INC.                          )
                                    )
           Third-Party Defendants.  )
_____ )
                                    )
ALFA LAVAL INC.                     )
                                    )
           Third-Party Plaintiff,   )
                                    )
           v.                       )
                                    )
ACME INDUSTRIAL EQUIPMENT COMPANY,  )
YUKON/HYDE PARK AVENUE LIMITED      )
PARTNERSHIP and JEANETTE YUKON      )
As General Partner of YUKON/HYDE    )
PARK AVENUE LIMITED PARTNERSHIP     )
                                    )
           Third-Party Defendants.  )
_____ )
```

**MEMORANDUM & ORDER**

YOUNG, D.J.                                    September 29, 2016

## I.    INTRODUCTION

This memorandum and order arises out of post-trial motions for attorney's fees and other costs following a protracted legal struggle over the cleanup of Middle and Lower Mother Brook in the Hyde Park neighborhood of Boston.  See <u>Thomas & Betts Corp.</u> v. <u>New Albertson's, Inc.</u>, No. 10-11947-WGY, 2016 WL 1735811, at *1-2 (D. Mass. May 2, 2016) (recounting historical background of the present litigation as detailed in Court's previous post-trial order).  In the months since the verdict, six parties have sought attorney's fees, costs or both: Dampney Company, Inc. ("Dampney"); Allis-Chalmers Energy, Inc. ("Allis-Chalmers"); New Albertson's, Inc. ("New Albertsons"); Thomas & Betts Corp. ("Thomas & Betts"), Boston Renaissance Charter School ("Charter School"); and Alfa Laval, Inc. ("Alfa Laval").

The instant parties represent but a fraction of the original number of parties before the Court, yet the present post-trial litigation alone encompasses almost another three dozen motions, memoranda, exhibits, and affidavits.  Despite the inherent complexity of so many filings, the pending motions

implicate only two cost-shifting rationales: (1) a claim for nontaxable attorney's and expert's fees by New Albertsons under Massachusetts General Laws chapter 21E, section 15; and (2) claims for taxable costs by each party pursuant to Federal Rule of Civil Procedure 54(d)(1).

The Court assumes familiarity with the relevant factual background and procedural posture of this case.  See Thomas & Betts, 2016 WL 1735811, at *1-2.  Accordingly, it summarizes only briefly the jury verdict and submissions filed in connection with the instant motions for fees and costs.

The jury returned its verdict in this case following a six-week trial.  It found, first, that Thomas & Betts's response costs were "necessary and appropriate" and apportioned the resultant payment responsibility three ways (85 percent to Thomas & Betts, 14 percent to Alfa Laval, and 1 percent to Charter School); second, that New Albertsons's response costs were also "necessary and appropriate" and ought be split between Thomas & Betts (75 percent) and New Albertsons (25 percent); and third, that New Albertsons did not "cause or contribute" to the pollution of Mother Brook, despite its equitable responsibility to bear some of the response costs.  See Jury Verdict ("Verdict") 1-4, ECF No. 801.

New Albertsons now seeks to recover fees and costs.

Corrected Mem. Law Supp. New Albertson's, Inc.'s Mot. Award Att'ys' and Experts' Fees Pursuant M.G.L. c. 21E, § 15 ("N.A. Mem."), ECF No. 883; Reply Mem. Supp. New Albertson's, Inc.'s Mot. Award Att'ys' and Experts' Fees Pursuant M.G.L. c. 21E, § 15 ("N.A. Reply"), ECF No. 914.  Thomas & Betts opposes this motion.  Pl.'s Opp'n New Albertson's Mot. Award Att'ys' and Expert Fees ("T&B Opp'n N.A."), ECF No. 902; Thomas & Betts Surreply Mem. Resp. New Albertson's Mot. Award Att'ys' and Expert Fees ("T&B Surreply"), ECF No. 917.

Additionally, each of the other parties has filed claims and cross-claims seeking to recover costs.  See Dampney Company, Inc.'s Mem. Supp. Bill Costs ("Dampney's Mem."), ECF No. 853; Allis-Chalmers Energy Inc.'s Mem. Supp. Bill Costs ("Allis-Chalmers's Mem."), ECF No. 855; Thomas & Betts Corporation's Mem. Supp. Mot. Bill Costs ("T&B Mem."), ECF No. 898; Boston Renaissance Charter School's Opp'n Thomas & Betts Corp.'s Mot. Bill Costs and Supp. Mot. Bill Costs ("Charter Mem."), ECF No. 909; Alfa Laval, Inc.'s Opp'n Thomas & Betts Corporation's Mot. Bill Costs and Cross-Mot. Bill Costs ("Alfa Mem."), ECF No. 906. These motions are also contested.  See Thomas & Betts Corporation's Opp'n Dampney Company's Bill Costs ("T&B Opp'n Dampney"), ECF No. 900; Thomas & Betts Corporation's Opp'n Allis-Chalmers Energy, Inc.'s Bill Costs ("T&B Opp'n Allis-

Chalmers"), ECF No. 899; Charter Mem.; Alfa Mem.

## II. **ANALYSIS**

Before the Court is New Albertsons's motion for fees and costs, as well as motions by Dampney, Allis-Chalmers, Thomas & Betts, Alfa Laval, and Charter School for costs.  Although Federal Rule of Civil procedure 54(d) provides the basic legal framework for claims for both fees and costs,[1] distinct subsections of that rule (and, correspondingly, distinct legal standards) govern each.  Accordingly, the Court analyzes them separately, first evaluating New Albertsons's motion for fees and then turning to the various parties' motions for costs.

### A.   **Fees**

New Albertsons argues that it is entitled to attorney's fees under state law, and proffers a calculation of an award. Thomas & Betts refutes the applicability of the state law fee-shifting provision, and further takes issue with New Albertsons's fee calculations.  The Court addresses these issues in turn.

---

[1] This is the case notwithstanding the underlying claims' state-law provenance, federal procedure provides the framework for any award of costs, even in diversity cases.  10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2669 (3d ed. 2016)(citing Henkel v. Chicago, St. P., M. & O. Ry. Co., 284 U.S. 444, 446 (1932)); see also Denny v. Westfield State College, 880 F.2d 1465, 1467 (1st Cir. 1989)(applying Henkel).

### 1.    Whether Fees are Recoverable

Federal Rule of Civil Procedure 54(d)(2) provides the procedure for requesting attorney's fees.  It applies, however, only where a party contends that fee-shifting is appropriate under some independent substantive law, as a "prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser."  <u>Alyeska Pipeline Service Co.</u> v. <u>Wilderness Society</u>, 421 U.S. 240, 247 (1975).

Here, New Albertsons claims it is entitled to attorney's fees under Massachusetts General Laws chapter 21E, section 15 ("Section 15").  N.A. Mem. 2, 4.  Thomas & Betts disputes this.  T&B Opp'n N.A. 6.

Section 15 provides:

> In any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter.

Mass. Gen. Laws ch. 21E, § 15.  As the language of Section 15 makes clear, recovery is available only to Massachusetts residents.  Further, a party may only recover fees under Section 15 if it was found "innocent" of contributing to hazardous waste release.  <u>See</u> <u>Bank</u> v. <u>Thermo Elemental Inc.</u>, 451 Mass. 638, 668 (2008).  Finally, even if a party is eligible to recover fees

under Section 15, the amount of any award is within the
discretion of the Court.  Sanitoy, Inc. v. Ilco Unican Corp.,
413 Mass. 627, 633 (1992).  The Court addresses these issues in
turn, ultimately concluding that New Albertsons is entitled to
fees under Section 15.

### a.   Residency

Thomas & Betts challenges New Albertsons's Massachusetts
residency, noting that New Albertsons is incorporated in Ohio
and has its principal place of business in Idaho.  T&B Opp'n
N.A. 11-12.  New Albertsons does not dispute that it is not
itself a corporate resident of Massachusetts, but contends it
ought be considered a resident under Section 15 while "standing
in the shoes" of its subsidiary, Shaw's Supermarkets ("Shaws"),
a Massachusetts corporation and tenant of 1377 Hyde Park Ave.
N.A. Mem. 6-7.

As an initial matter, that New Albertsons is a corporate
entity, rather than an individual citizen, does not disqualify
it from recovering of fees under Section 15.  See Sanitoy, Inc.
v. Ilco Unican Corp., 413 Mass. 627, 632 (1992).  Faced with a
dearth of instructive case law on the issue of whether New
Albertsons, as the parent company of Shaws, ought be considered
a Massachusetts resident, the Court adopts a functional approach
to Section 15 and concludes that New Albertsons satisfies the

residency requirement.

Over the course of this litigation, New Albertsons accepted responsibility for the 1377 Hyde Park property cleanup obligations.  Indeed, it admitted that it was an "operator" of the relevant Shaws facility.[2]  Ignoring an out-of-state parent corporation's willingness to "stand[] in the shoes" of a subsidiary would seem to subvert Chapter 21E's goal of incentivizing hazardous waste clean-up.  See Acme Laundry Co. v. Sec'y of Envtl. Affairs, 410 Mass. 760, 764 (1991) (citing Sheehy v. Lipton Indus., Inc., 24 Mass. App. Ct. 188, 197 (1987)) ("Chapter 21E 'is drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material.'").  Moreover, the Supreme Judicial Court has interpreted the scope of Section 15 broadly, in the interest of achieving expeditious toxic material clean-up.  See Sanitoy, 413 Mass. at 632 (refusing to limit Section 15 applicability to a putative class made of multiple residents because it would "diminish the role that a single party must play in resolving the hazardous waste disposal problem in Massachusetts").  Thus,

---

[2] Thomas & Betts' initial complaint referred to New Albertsons as the "operator" of the 1377 Hyde Park Avenue Shaw's Supermarket facility, Compl. ¶ 6, ECF No. 1. -- a characterization New Albertsons admitted and pled themselves, Answer and Crosscl. New Albertson's, Inc. 2 at ¶ 6, 14 at ¶ 5, ECF No. 7.

interpreting the residency requirement of Section 15 to include New Albertsons here best advances the purpose of the statute.

### b.   Innocence

Only "innocent" parties -- defined as those "which ha[ve] not contributed to, or caused, the release of hazardous materials necessitating . . . response actions" -- can recover under Section 15.  Martignetti v. Haigh-Farr Inc., 425 Mass. 294, 321 (1997); see also Thermo Elemental, 451 Mass. at 668 (award under Section 15 warranted where "jury found [the plaintiff] did not cause or contribute to the contamination").  Here, the jury allocated a 25 percent equitable share of cleanup costs to New Albertsons.  Verdict 3.  Thomas & Betts contends that a party cannot be "innocent" when a jury allocates to it any equitable share of the response costs, and therefore the 25 percent allocation of costs disqualifies New Albertsons from recovering under Section 15.  T&B Opp'n N.A. 3-6; T&B Surreply 1-2.  New Albertsons's argues, instead, that a party is innocent so long as it did not cause or contribute to the underlying pollution, regardless of its responsibility to share in clean-up costs.  N.A. Reply 1-3.

The Court agrees with New Albertsons.  As with the Sanitoy plaintiff, who was entitled to recover fees under Section 15 despite being found responsible for certain hazardous waste

response costs, see Martignetti, 425 Mass. at 320, New
Albertsons's liability is only for their reasonable clean-up
costs as current owner, and not as a contributor to the
contamination.[3]  As such, New Albertsons is an "innocent" party,
for the purpose of Section 15.

### c.   Discretionary Denial

Thomas & Betts next urges the Court to exercise its
discretion to deny New Albertsons's request for fees on the
ground that New Albertsons did not "advance the purpose" of
Chapter 21E and in fact "delayed and frustrated remediation
efforts[.]"[4]  T&B Opp'n N.A. 7.  In support of this argument,

---

[3] While the Martignetti court did observe that equitable
cost assessment at trial could so mar a party's "innocence" as
to disqualify it from a Section 15 award, 425 Mass. at 321 n.42,
that case is distinguishable because all parties had an interest
in the land at the time the contamination occurred, and thus it
was reasonable to infer "guilt" from response cost liability,
see id. at 296-97 (noting contamination transpired while
property was owned by plaintiffs and operated by defendant).
Here, the jury found New Albertsons responsible for response
costs as the current property operator, but found it was not
liable for previously-occurring contamination.  Verdict 3-4.  As
a result, Martignetti's principal holding, "constru[ing] Section
15 as allowing an award of attorney's fees and costs only to
persons who have not themselves contributed to the hazardous
waste release," 425 Mass. at 323-24 (emphasis added), better
applies.

[4] As a further reason to deny costs, Thomas & Betts
reiterate their contention that this Court erred in not
submitting a breach of contract question to the jury.  T&B Opp'n
N.A. 7 n.6.  The Court stands by its previous ruling and will

Thomas & Betts principally relies on Hill v. Metro. Dist.
Comm'n, 439 Mass. 266 (2003), in which the Supreme Judicial
Court upheld a trial judge's denial of the plaintiff's request
for fees under Section 15.  Hill is plainly distinguishable,
however.  There, the plaintiff had "deliberately and for no good
reason breached the parties' . . . agreement to mediate this
entire dispute," thereby delaying subsequent cleanup efforts by
litigating the issue instead.  Id. at 278-79.  Here, Thomas &
Betts identifies two instances of delays that it claims stem
from New Albertsons's refusal to allow access through the 1377
Hyde Park property or support simultaneous remediation on both
banks of Mother Brook.  T&B Opp'n N.A. 8-11.  These issues
pertain not to legal tactics, but rather to technical issues of
compliance by New Albertsons when they were still acting
pursuant to their agreement with Thomas & Betts to alleviate the
pollution of Mother Brook.  See id.  In these circumstances, New
Albertsons has shown that its conduct was sufficient to "advance
the purposes" of chapter 21E.  Cf. Thermo Elemental, 451 Mass.
at 668-69 (rejecting argument that party seeking attorney's fees
under Section 15 failed to advance the purpose of the statute on
the ground that it, inter alia, "conducted a response action

---

not further address the matter here.  See Thomas & Betts Corp.,
2016 WL 1735811, at *3.

that was unreasonably delayed").

### 2.   Amount of Recoverable Fees

Thomas & Betts argues that even if New Albertsons is entitled to recover attorney's fees under Section 15, the fee award requested by New Albertsons ought be reduced.   T&B Opp'n N.A. 13-20.   Specifically, Thomas & Betts claims that the accounting of costs by New Albertsons is flawed because it does not separate out work done for Supermarket Parties[5] other than New Albertsons.   Id. at 13-17.   Moreover, it contends that because the Charter School and Alfa Laval were also found liable, it should only have to pay one-third of the fees, notwithstanding New Albertsons's decision not to demand fees from those parties.   Id. at 17-20.   In opposition, New Albertsons argues that their fees already reflect careful discounting and rightfully ought be taken only from Thomas & Betts, the one party found liable to them in the jury verdict. N.A. Reply 7-8.   The Court addresses these arguments in turn.

### a.   Specificity of Attorney's Fees Billing Entries

---

[5] Sugarman Rogers represented New Albertsons throughout the present litigation as well as the three other Supermarket Parties, consisting of "two of New Albertsons' subsidiary companies and the property owner (which another New Albertsons' subsidiary was obligated to indemnify)."   N.A. Reply 7.   Both sides agree to this characterization, but each draws a different conclusion about how it ought affect the award.   Compare T&B Opp'n N.A. 13-17, with N.A. Reply 7-8.

Thomas & Betts argues that the amount of fees New Albertsons seeks is flawed because such amount includes billing entries for work not specific to New Albertsons.  <u>See</u> T&B Opp'n N.A. 13.  New Albertsons did identify a small portion of billing entries (specifically, 89 entries out of 5,469 submitted -- 1.6 percent) that involved work for other Supermarket Parties and reduce those by 50 percent.  <u>Id.</u> at 14-15.[6]  Thomas & Betts has identified a number of additional billing entries, however, that apparently correspond to work performed not solely for New Albertsons's benefit (and in some cases, not for its benefit at all).  <u>See id.</u> at 16-17.  As a result, it argues that New Albertsons's fee award, if it is entitled to one, ought be reduced by 75 percent.  <u>Id.</u> at 17.  In opposition, New Albertsons asserts that it is entitled to recover 100 percent of the fees for the additional billing entries Thomas & Betts identifies because "the claims and defenses of the four Supermarket Parties [are] substantially based on a common core of facts."  N.A. Reply 8.

---

[6] Additionally, New Albertsons claims to have already excluded 2,587 of the 8,056 original billing entries already paid to Sugarman Rogers, stating the excluded entries represent the bulk of work applicable to parties other than New Albertsons.  Suppl. Aff. Lisa C. Goodheart Supp. New Albertson's Mot. Attorneys' and Experts' Fees and Costs Pursuant M.G.L. c. 21E, § 15 ("Goodheart Suppl. Aff.") 2, ECF. No. 915.

The Court has broad discretion to determine a reasonable fee award under Section 15.  See Sanitoy, 413 Mass. at 633-34; cf. Furtado v. Bishop, 635 F.2d 915, 919 (1st Cir. 1980) (stating that the "goal of avoiding awards of undeserved fees is . . . better advanced by close and systematic scrutiny than by special formulae").  Massachusetts has followed the lead of the federal courts and adopted the lodestar method[7] to aid in objectively evaluating reasonableness.  Joyce v. Town of Dennis, 720 F.3d 12, 26-27 (1st Cir. 2013).  Failure to keep detailed, contemporaneous records does not disqualify recovery, but may severely reduce it.  Grendel's Den, Inc., 749 F.2d at 952. Furthermore, "[c]ounsel's time spent pursuing unsuccessful claims is generally non-compensable unless it can be shown that

---

[7] Lodestar factors include:

the nature of the case and the issues presented, the time and labor required, the amount of the damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.

Sanitoy, 413 Mass. at 634.  Notably, Thomas & Betts does not contest New Albertsons's lodestar arithmetic related to rates charged and hours spent.  See Goodheart Suppl. Aff. 1.  Given the high standard for such awards, New Albertsons also prudently avoids seeking a lodestar multiple as a reward for the trial's length and complexity.  See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 542-43 (2010) (holding lodestar multiple will only be upheld in "rare" or "exceptional" circumstances).

the unsuccessful and successful claims were interconnected[,]"
i.e., that they involve "a common core of facts or were based on
related legal theories."  Connolly v. Harrelson, 33 F. Supp. 2d
92, 97 (D. Mass. 1999) (internal quotation marks, citations, and
alterations omitted).

New Albertsons argues that to the extent its fee request
includes billing entries pertaining to other Supermarket
Parties, such fees are fully recoverable because the work "would
have been done even if New Albertsons had been the only
Supermarket Party in the case."  Suppl. Aff. Lisa C. Goodheart
Supp. New Albertson's Mot. Attorneys' and Experts' Fees and
Costs Pursuant M.G.L. c. 21E, § 15 ("Goodheart Suppl. Aff.") ¶
9, ECF. No. 915.  As is clear from New Albertsons's decision to
remove certain billing entries from its fee motion and to reduce
others by some percentage, not all of the work performed by
Sugarman Rogers in connection with this case served New
Albertsons exclusively or at all.  Unfortunately, the Court has
no meaningful way of differentiating those entries to which New
Albertsons has already applied a discount from various others on
which it seeks to recoup 100 percent.  Indeed, as Thomas & Betts
points out, New Albertsons appears to have selected those
entries that it chose to discount "arbitrarily and
haphazardly[.]"  T&B Opp'n N.A. 15.  New Albertsons fails

adequately to explain why the many other similar billing entries that Thomas & Betts has identified as in service of other Supermarket Parties are not subject to the same discount.

Given that Section 15 is not a new statue -- and New Albertsons is no neophyte -- Sugarman Rogers's failure to keep more detailed records must be seen as purposeful and ought not be rewarded. Further, the Court is not convinced that each party is so similarly situated that this case falls into the "multiple interrelated claims" category, N.A. Reply 8. Contrast Connolly, 33 F. Supp. 2d at 97 (successful and unsuccessful claims "were virtually identical" and "each claim rested on the same legal theories"). New Albertsons's conclusory assertions that the fee claim includes "work that would have been done" and that the attorneys conducted the litigation in such a manner as to maximize efficiencies, also fail to justify New Albertsons's failure to keep adequate records. Consequently, the Court reasons that additional billing entries identified by Thomas & Betts, besides those identified by New Albertsons in its requested award, ought be discounted. T&B Opp'n 14-17; Aff. Howard Merten ¶ 22, ECF No. 903.

The Court adopts Thomas & Betts's keyword search methodology for identifying additional billing entries for discounting, noting that the Merten Affidavit states, "[t]he

collected billing entries contained in such exhibits are not meant to be exhaustive but merely samples of relevant billing entries. Aff. Howard Merten ¶ 22, ECF No. 903. The billing entries identified using the approach documented in the Merten Affidavit and Exhibits B, C, D, G, H, I, L, M, P, and any additional billing entries the parties identify using this methodology, will be discounted. The remaining billing entries are awarded in full to New Albertsons.

The next question, then, is the proper discount rate for those billing entries that correspond to work performed for other Supermarket Defendants in addition to New Albertsons. New Albertsons lays out a range of discount percentages, reflecting, it says, "the extent to which the referenced work benefitted New Albertson's . . . and/or . . . might be challenged as reflecting excessive work." Goodheart Suppl. Aff. 2. This vague "individualized judgment" standard, applied to an arbitrary number of billing entries, is so opaque as to preclude effective review. In contrast, Thomas & Betts urges a pro-rata discount of 75 percent for multiple-party work, T&B Opp'n N.A. 14, pointing to an analogous instance in which a 50 percent reduction was imposed when only one of two parties was statutorily authorized to recover fees. See United States v. Knott, 106 F. Supp. 2d 174, 180 (D. Mass. 2000) (Gorton, J.),

rev'd on other grounds, 256 F.3d 20 (1st Cir. 2001).  Though

following Knott leads to a steep discount in this instance, the

Court concludes that it is an articulable standard that can be

rationally and systematically applied.  Accordingly, the Court

holds that all work performed for "Supermarket Parties" ought be

discounted by 75 percent, and all other multiple-party items by

the same percentage.[8]

### b.   Several Liability

Both Alfa Laval and Charter School were found accountable

for a percentage of Thomas & Betts's response costs.  See

Verdict 1-2.  Thomas & Betts argues that as a result of this, it

ought be responsible for only one-third of the claimed

attorney's fee amount.  T&B Opp'n N.A. 17-18.  In response, Alfa

Laval, Charter School, and New Albertsons argue that only Thomas

& Betts is liable for fees under Section 15.  See N.A. Reply 8;

Joint Reply 3-4.

While Section 15 does create several liability, such scheme

only applies to parties found liable in a contribution action

under Massachusetts General Laws chapter 21E, section 4.  See

Martignetti, 425 Mass. at 318 n.40.  Only Thomas & Betts was

found liable to New Albertsons on New Albertsons's Section 4

_____

[8] A 75 percent discount is appropriate here, consistent with
the Knott approach, because New Albertsons was one of four
parties for whom Sugarman Rogers performed for in this case.

claim.  Verdict 3-4.  Because Thomas & Betts "was the only party found responsible under [Section 4], it is the only party required to pay under [Section 15]."  451 Mass. at 668 n.39. Thus, the Court will not reduce the proposed fee award on this ground.

### c.   Expert's and Litigation Support Fees

Fee shifting of expert's and e-discovery fees is generally subject to the same analysis as that of attorney's fees.  See, e.g., Race Tires America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 171 (3d Cir. 2012) (limiting taxable e-discovery costs to "scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD"); Denny v. Westfield State College, 880 F.2d 1465, 1468 (1st Cir. 1989) (Rule 54(d) does "not constitute an independent source of judicial discretion sufficient to shift the burden of expert witness fees"); see also Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 449 (1987) (adopting narrow construction of 28 U.S.C. § 1920 in context of expert witness fees).

Since the Court has determined that New Albertsons is entitled to recover fees pursuant to Massachusetts General Laws chapter 21, section 15, the question remains whether any discount should be applied to the claimed expert and e-discovery fees.  New Albertsons states that it applied discounts to its

expert's fees, based on the role of the expert in the litigation as well as fee sharing arrangements with other defendants, to arrive at its claimed fee.[9]  Corrected Goodheart Aff. ¶¶ 74-76, 106-38, Exs. I, K, L, N.  Thomas & Betts offers no alternative calculation of expert's fees, simply stating that "it is impossible to determine which expert fees . . . were incurred for New Albertson's and which were incurred for the other Supermarket Parties."  T&B Opp'n. N.A. 17.  In the absence of any meaningful challenge by Thomas & Betts to the expert-fee calculation, particularly given the detailed information provided by New Albertsons, the Court awards New Albertsons its claimed expert fees pursuant to Section 15.

Similarly, New Albertsons's claims that the $111,952.03 paid to HaystackID (formerly known as Boston Litigation Solutions) reflects its share of a cost-sharing arrangement between the various parties.  Corrected Goodheart Aff. ¶¶ 139-45.  The HaystackID invoices validate New Albertsons's statements, and show that the e-discovery platform costs were "split among 4 parties."  Corrected Goodheart Aff., Ex. Q at 84.

---

[9] New Albertsons claims fees and costs associated with the following environmental experts: Deborah H. Gevalt of Haley & Aldrich, Inc.; Allen D. Uhler of NewFields; Mark Tompkins of NewFields and FlowWest; and Michael Pierdinock of Lightship Engineering, Inc.  Corrected Goodheart Aff. ¶ 105.  Of the four experts, New Albertsons claims the entire fee for only Dr. Gevalt.  Id. ¶ 75.

The text of these invoices belies Thomas & Betts's contention that the HaystackID costs were impossible to allocate.  T&B Opp'n N.A. 17.  Accordingly, the Court grants New Albertsons's requested litigation support and e-discovery fees in full.

### B.   Costs

Unlike attorney's fees, which are typically borne by each party regardless of the outcome of a case, taxable costs "should be allowed to the prevailing party" absent a contravening rule, statute or court order.  Fed. R. Civ. P. 54(d)(1).[10]  Taxable costs subject to this rule include, <u>inter alia</u>, clerk, transcript, printing, and copying costs.  28 U.S.C. § 1920. While there exists "a background presumption favoring cost recovery for prevailing parties[,]" district courts retain "negative discretion," <u>i.e.</u>, "the power to deny recovery of costs that are categorically eligible for taxation under Rule 54(d)[.]"  <u>In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.</u>, 994 F.2d 956, 962 (1st Cir. 1993).  A court need not "state reasons or make elaborate findings" every time it denies costs, but if "the situation is less than obvious, the court must offer some statement as to why it denied

---

[10] The proviso "should be" has been interpreted to mean that such costs usually ought be awarded to a prevailing party as matter of course.  <u>In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.</u>, 994 F.2d 956, 962 (1st Cir. 1993).

statutory costs to a prevailing party."  Id. at 963.

New Albertsons requests costs in conjunction with its
motion for attorney's fees.  Additionally, Dampney, Allis-
Chalmers, Thomas & Betts, Alfa Laval, and Charter School have
each moved for costs.  The Court first discusses New
Albertsons's request and then proceeds to evaluate the other
parties' requests.

### 1.   New Albertsons

New Albertsons claims $61,637.29 in taxable costs and
disbursements, after "downward adjustments of the charges for
the work actually performed and the costs actually incurred,"
paid to Sugarman Rogers.  Corrected Goodheart Aff. ¶¶ 96-98, Ex.
G.  Thomas & Betts, however, correctly notes that "it is
impossible to determine which . . . photocopying charges,
messenger fees, travel expenses, and miscellaneous charges were
incurred for New Albertson's and which were incurred for the
other Supermarket Parties."  T&B Opp'n N.A. 17.

Although the Court rejects Thomas & Betts's same argument
with respect to expert's and e-discovery fees on the ground that
New Albertsons's provided sufficiently detailed invoices
discounting fees for work performed for other parties, New
Albertsons has neither calculated its pro rata share of taxable
costs, nor provided documentation separating costs among the

different parties.  Balancing the presumption in favor of cost recovery against New Albertsons's failure to discount its costs to its appropriate share and to provide adequate documentation of such reduction, see Bucksar v. Mayo, No. 11-10134-RBC, 2013 WL 1320445 (D. Mass. Mar. 38, 2013) (Collings, M.J.); Martinez v. Cui, No. 06-40029-FDS, 2009 WL 3298080 (D. Mass. Apr. 13, 2009) (Saris, J.), the Court GRANTS New Albertsons's motion for costs.  But following its rationale for reducing attorney's fees, supra, the award of costs is reduced by 75 percent.

### 2.   Dampney and Allis-Chalmers

Dampney and Allis-Chalmers seek taxable costs from Thomas & Betts, as prevailing parties.  See Dampney's Mem.; Allis-Chalmers's Mem.  Thomas & Betts disputes this, arguing that it was not the only party against whom Dampney and Allis-Chalmers prevailed and thus ought not be forced to bear all of their costs; that binding cost-sharing agreements preclude recovery of certain costs; and that not all of the expenses for which Dampney and Allis-Chalmers seek reimbursement were incurred in connection with their defense against Thomas & Betts.  T&B Opp'n Allis-Chalmers 2-3; T&B Opp'n Dampney 2-3.

Although Thomas & Betts is correct that the Court is empowered to apportion costs among the losing parties, see T&B's Opp'n Dampney 2; T&B's Opp'n Allis-Chalmers 2, it certainly need

not do so, particularly where the circumstances indicate, as here, that one plaintiff (namely Thomas & Betts) was the prevailing parties' primary opponent.  Further, absent clear precedent instructing that parties waive their right to recover costs by virtue of entering into cost-sharing agreements during litigation, the Court rules that Dampney and Allis-Chalmers are entitled to seek costs, notwithstanding their cost-sharing agreements.  Lastly, Dampney and Allis-Chalmers have shown that the costs they incurred were necessary to defend against Thomas & Betts's claims.

Accordingly, the Court GRANTS Allis-Chalmers's and Dampney's motions for costs.

### 3.    Thomas & Betts, Alfa Laval, and Charter School

Thomas & Betts seeks to recover costs from Alfa Laval and Charter School.  T&B Mem.  Alfa Laval and Charter School each oppose this and cross-move for costs.  Alfa Laval Mem; Charter Mem.

Thomas & Betts's claim that it is a prevailing party, and therefore entitled to costs, is premised on the jury's finding that Alfa Laval and Charter School shared some of the responsibility for remediation costs.  See T&B Mem. 2.  As Alfa Laval and Charter School point out, however, pursuant to this rationale Alfa Laval and Charter School are also entitled to

recover costs from Thomas & Betts.  Alfa Laval Mem. 4-5; Charter Mem. 8-9.

The Court is not convinced that any of these three parties "carried the day." Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 29 (1st Cir. 2014).  As none clearly constitutes a prevailing party -- indeed, they were each found to bear some responsibility -- and apportioning costs would be needlessly complex and not certain to produce an equitable result, the Court rules that each party ought bear its own costs.  See Sheehy v. Town of Plymouth, No. Civ. A. 95-12425-RBC, 2001 WL 92386, at *4-6 (D. Mass. Jan. 18, 2011) (Collings, M.J.) (observing that courts have discretion to order parties to bear their own costs in cases involving mixed judgments and listing cases in which courts so held).

## III. CONCLUSION

Consistent with the analysis above, the Court GRANTS New Albertsons's motion for fees and costs.  The amount awarded for New Albertsons's attorney's fees is reduced, however, by 75 percent as to each item performed for the Supermarket Parties or other multiple parties generally.  Discounted billing entries are to be identified using Thomas & Betts's keyword search methodology documented in the Affidavit of Howard Merten, ECF No. 903 and accompanying Exhibits B, C, D, G, H, I, L, M, P.

Fees sought for all remaining billing entries are awarded in full.  The amount awarded for New Albertsons's costs is also reduced by 75 percent.  The Court further GRANTS Allis-Chalmers's and Dampney's motions for costs.  Thomas & Betts's, Charter School's, and Alfa Laval's motions for costs are DENIED. The parties shall prepare a form of judgment consistent with this memorandum and order.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE